HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOHAMMED SIDDIQUI,

    Plaintiff,

v.

UNIVERSITY OF WASHINGTON, et al.,

    Defendants.

CASE NO. C14-349RAJ

ORDER

## I.  INTRODUCTION

This matter comes before the court on Defendant Keith Vogel's motion asking the court to dismiss Plaintiff's Washington-law claim against him via Washington's anti-SLAPP statute, RCW 4.24.525.  For the reasons stated herein, the court DENIES the motion.  Dkt. # 9.

## II.  BACKGROUND

Plaintiff Mohammed Siddiqui was a veterinary specialist at the Washington National Primate Research Center ("NPRC").  He contends that the University of Washington operates the NPRC.  On October 29, 2012, Mr. Siddiqui administered ketamine, an anesthetic, to an infant primate in preparation for a surgery.  Dr. Vogel, a veterinarian, performed the surgery.  Although the surgery was successful, the primate was unusually slow to awaken afterward.

The evidence is somewhat conflicted as to what Dr. Vogel did next.  Dr. Vogel declares that he examined the surgical record for any notation that might explain the

ORDER – 1

1  primate's slow recovery.  He saw that the recorded dose of ketamine, 80 milligrams, was
2  ten times the proper dose.  He called Mr. Siddiqui to inquire what dose he had given, and
3  Mr. Siddiqui responded that he had given 8 milligrams, a correct dose.  According to Dr.
4  Vogel, Mr. Siddiqui stated that he would check the "drug log sheet" to confirm, and
5  confirmed shortly thereafter that he had given 10 milligrams, which was apparently close
6  enough to the correct dose.  Dr. Vogel contends that he examined the drug log himself,
7  and found that a notation for 0.8 milliliters (the equivalent of 80 milligrams because of
8  the concentration of the ketamine solution) had been crossed out, and 0.1 milliliters (the
9  equivalent of 10 milligrams) had been written in.  He also discovered that the ketamine
10 bottle was empty, whereas it should have had between 2 and 3 milliliters remaining in it
11 if Mr. Siddiqui's notations were correct.  Dr. Vogel contends that he reported this
12 discrepancy to Dr. Charlotte Hotchkiss, the person holding the Drug Enforcement
13 Administration license for the NPRC.  He contends that he was required to do so by law.

       Dr. Hotchkiss describes the events slightly differently.  According to her, when
Dr. Vogel first contacted her, he was merely reporting that the surgery record showed an
overdose of ketamine.  It was Dr. Hotchkiss who suggested that he examine the drug log.
Dr. Vogel called her later and reported that he had examined the drug log and found the
modification of the original 0.8-milliliters entry.  Dr. Hotchkiss examined the log herself,
along with the empty ketamine bottle.  Three days later, on November 1, 2012, she filed a
report to the DEA declaring that the NPRC had lost 2.9 milliliters of ketamine.

       Mr. Siddiqui does not mention Dr. Hotchkiss or the DEA report in his complaint.
That is because, as nearly as the court can tell, Mr. Siddiqui is not complaining about Dr.
Hotchkiss or her report to the DEA.  Instead, he is complaining that on November 1,
2012, Director Anderson told him that he would be fired because of a "safety and
integrity" issue.  He offered to permit Mr. Siddiqui to resign rather than be fired, and Mr.
Siddiqui resigned.  Later, Mr. Siddiqui regretted that choice.  He contends that Director
Anderson coerced his resignation.

ORDER – 2

Mr. Siddiqui sued the University, Director Anderson, and Dr. Vogel. His complaint lists several claims arising under 42 U.S.C. § 1983. He contends that his Due Process rights were violated by his coerced resignation, that the coerced resignation was in retaliation for his exercise of First Amendment rights, and that Defendants violated the Equal Protection Clause of the Fourteenth Amendment. He also invoked the Washington Law Against Discrimination, (RCW Ch. 49.60, "WLAD"), contending that his coerced resignation was either motivated by his age or race, or that it was in retaliation for exercising protected rights.

It is not clear from reading his complaint why Mr. Siddiqui is suing Dr. Vogel. There are no allegations that Dr. Vogel supervised him or had the power to terminate his employment or take other adverse action against him. There is an allegation that the "staff veterinarian responsible for the [primate]'s safety reported to defendant Anderson a complaint against Siddiqui's conduct in the operating theater that day," Compl. (Dkt. # 1) ¶ 8, although it is not clear whether Dr. Vogel is the "staff veterinarian" to whom that allegation refers.

In response to the motion before the court, Mr. Siddiqui has explained that he based his claim against Dr. Vogel on a letter that he obtained via a public records request. In that letter, which Dr. Vogel addressed to the NPRC's personnel manager, he described the October 29 surgery, the apparent overdose of ketamine reflected in the surgery record, his conversation with Dr. Hotchkiss, and his examination of the drug log and the empty ketamine bottle. The date of the letter is redacted. Unlike in his declaration, Dr. Vogel states in the letter that he did not examine the drug log until after Dr. Hotchkiss told him to. Mr. Siddiqui claims that he was unaware that Dr. Hotchkiss had made the DEA report until after he filed this lawsuit.

### III.  ANALYSIS

Dr. Vogel's motion invokes Washington's anti-SLAPP statute. That statute, which Dr. Vogel concedes can only apply to Mr. Siddiqui's Washington-law claims,

ORDER – 3

permits a party to "bring a special motion to strike any claim that is based on an action involving public participation and petition . . . ." RCW 4.24.525(4)(a). The moving party has the "initial burden of showing by a preponderance of the evidence that the claim is based on an action involving public participation and petition." RCW 4.24.525(4)(b). Dr. Vogel asserts that his report of the ketamine discrepancy to Dr. Hotchkiss is an action involving public participation and petition. The court accepts that assertion for purposes of this motion, without suggesting a position as to whether his report to Dr. Hotchkiss falls within the statutory definition of an "action involving public participation and petition." *See* RCW 4.24.525(2)(a)-(e).

Dr. Vogel falls well short of carrying his initial burden to show that Mr. Siddiqui's claim against him is based on his action involving public participation and petition. There is no evidence that Mr. Siddiqui knew until after he sued that Dr. Hotchkiss had used information she first learned from Dr. Vogel make a report to the DEA. There is no indication in either Mr. Siddiqui's complaint or in the evidence before the court that he is bringing any claim based on the DEA report. Although his complaint is relatively murky as to his basis for suing Dr. Vogel, his declaration accompanying his opposition to Dr. Vogel's motion states that Dr. Vogel discriminated against him on the basis of his age and race. Those allegations have nothing to do with Dr. Vogel's report of the ketamine discrepancy. Put another way, if Dr. Vogel had never mentioned the discrepancy to Dr. Hotchkiss, Mr. Siddiqui still would have sued him.

To the extent that Dr. Vogel believes that his repetition of his account of the October 29, 2012 surgery and the discovery of the allegedly altered drug log to human resources personnel or to Director Anderson falls within the scope of the anti-SLAPP statute, he is mistaken. Dr. Vogel relies on *Dang v. Ehredt*, 977 P.2d 29, 37 (Wash. Ct. App. 1999), but that case rejects its expansive view of the anti-SLAPP statute. There, the court favorably cited a California court who had upheld the invocation of an anti-SLAPP statute where "without the [defendant]'s report to the police and the subsequent arrest, the

ORDER – 4

plaintiff would have suffered no harm." *Id.*  In this case, by contrast, Mr. Siddiqui would have suffered the same harm even if Dr. Vogel had never said a word to Dr. Hotchkiss. Even assuming that the report to Dr. Hotchkiss was within the scope of the anti-SLAPP statute (because it implicated the NPRC's legal responsibility to report drug discrepancies to the DEA), there is no evidence that his repetition of that report to Director Anderson or human resources personnel fell within the scope of the statute.  It was those acts, not the report to Dr. Hotchkiss, that caused the injuries for which Mr. Siddiqui now sues.

Moreover, even if there were some portion of Mr. Siddiqui's suit based on Dr. Vogel's report to Dr. Hotchkiss, the most the court could do would be to excise the portion of Mr. Siddiqui's claim that relates to the drug discrepancy.  Much of Mr. Siddiqui's suit has nothing to do with that discrepancy.

Finally, the court notes that Dr. Vogel devoted a few sentences near the conclusion of his motion to an argument that Mr. Siddiqui's federal claims do not target him.  Dr. Vogel does not invoke Federal Rule of Civil Procedure 12(b)(6), which permits the court to dismiss a complaint that fails to state a claim.  He does not cite any legal authority applicable to a 12(b)(6) motion.  For that reason, the court expresses no view on whether Mr. Siddiqui has stated a federal claim against Dr. Vogel.[1]

## IV.  CONCLUSION

For the reasons previously stated, the court DENIES Dr. Vogel's motion invoking Washington's anti-SLAPP statute.  Dkt. # 9.

DATED this 27th day of August, 2014.

*(signature: Richard A. Jones)*

The Honorable Richard A. Jones
United States District Court Judge

---

[1] The court's disposition today does not require it to address many of the arguments Mr. Siddiqui made in opposition to Dr. Vogel's motion, and the court declines to do so.

ORDER – 5